**In re Gerald KARBEN and Susan M. Karben, Debtors.**

**Gerald KARBEN and Susan M. Karben, Plaintiffs,**

v.

**ELSI, First National Bank of Maryland and Nellie Mae, the Education Resources Institute, Inc. ("TERI"), Defendants.**

**Bankruptcy No. 93–B–21556.
Adv. No. 94–5073A.**

United States Bankruptcy Court,
S.D. New York.

Aug. 23, 1996.

Jeffrey L. Sapir by Gloria Indik, White Plains, New York, for Plaintiffs.

Shaw, Licitra, Parente, Esernio & Schwartz, P.C. by Sarah M. Keenan and Craig A. Damast, Garden City, New York, for Defendant The Education Resources Institute, Inc.

Frederick J. Schreyer, Albany, NY, for Massachusetts Higher Education Assistance Corp.

## DECISION DENYING PARENT–DEBTOR'S MOTION FOR A DETERMINATION DECLARING EDUCATIONAL LOANS TO BE DISCHARGEABLE

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

In this adversary proceeding pursuant to Bankruptcy Rule 7001(6), Gerald and Susan Karben (the "Debtors") seek a determination that their obligations as co-signors on certain educational loans to their children are dischargeable, notwithstanding the exception to 11 U.S.C. § 727 set forth in section 523(a)(8). This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334 and 157(a) and (b).

The facts are not in dispute. The debtors and their daughter Allison Karben entered into two loan agreements with the Bank of New England, N.A. and Nellie Mae Inc. on November 5, 1987 and September 11, 1988 for the principal sums of $14,583.33 and $16,000, respectively, to finance Allison's education. Subsequently, the debtors and their son Alan Karben entered into a loan agreement with the Bank of New England, N.A. and Nellie Mae, Inc. on June 15, 1990 for the principal sum of $20,000 to finance Alan's education. Repayment of all three loans was guaranteed by The Education Resources Institute, Inc. ("TERI"), a private non-profit corporation created under Massachusetts law to administer the TERI Supplemental Loan Program providing financial assistance to students enrolled in programs of higher education. On February 15, 1992 the debtors entered into a loan agreement with Fleet Bank of Massachusetts for $4,000 to help finance Alan's education. This loan was guaranteed by MHEAC and reinsured by the Federal Government under the provisions of the *Federal Higher Education Act* (20 U.S.C. § 1071). The debtors defaulted on payments due under each of these loans in May 1993.

Section 523 (a)(8) states, in relevant part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\*     \*     \*     \*     \*     \*

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend unless—[subsections (A) and (B) not relevant].

The sole question presented here is whether section 523(a)(8) applies to education loan obligors other than students receiving the education funded by such loans.

The courts are divided on this question. The following cases have held that section 523(a)(8) applies only to student borrowers. *Kirkish v. Meritor Savings Bank (In re Kirkish)*, 144 B.R. 367 (Bankr.W.D.Mich. 1992); *Bartsch v. Wisconsin Higher Education Corp. (In re Meier)*, 85 B.R. 805 (Bankr.W.D.Wis.1986); *Northwestern University Student Loan Office v. Behr (In re Behr)*, 80 B.R. 124 (Bankr.N.D.Iowa 1987); *Zobel v. Iowa College Aid Commission (In re Zobel)*, 80 B.R. 950 (Bankr.N.D.Iowa 1986); *Bawden v. First Southern Federal Savings and Loan Association (In re Bawden)*, 55

B.R. 459 (Bankr.M.D.Ala.1985); *Washington v. Virginia State Education Assistance Authority* (*In re Washington*), 41 B.R. 211 (Bankr.E.D.Va.1984); *Boylen v. First National Bank of Akron and Ohio Student Loan Commission* (*In re Boylen*), 29 B.R. 924 (Bankr.N.D.Ohio 1983). These decisions view section 523(a)(8) through the prism of a narrow and questionable interpretation of the legislative history, assuming that rising student-debtor fraud alone prompted Congress to enact the statute.

There is little doubt that the sponsors of section 523(a)(8) were concerned with the increasing number of students on the verge of lucrative careers who filed for bankruptcy in order to absolve themselves of the debts they incurred through government-sponsored loan agreements. "Some individuals have financed their education and upon graduation have filed petitions under the Bankruptcy Act and obtained a discharge without any attempt to repay the educational loan and without the presence of any extenuating circumstance, such as illness." *See* H.R.Doc No. 137, 93d Cong. 1st Sec., Pts. I and II (1973), *reprinted in* App. 2 *Collier on Bankruptcy section* I, at 176–77.

█ However, arguments and assumptions based on legislative history cannot override the legislative intent expressed in the clear words of the statute. The statutory language draws no distinction between obligors on an educational loan. The plain meaning of the statute strongly suggests that educational loans are nondischargeable whether the named borrower is a student or not. Indeed, the exceptions to the nondischargeability of student loans are "carefully delineated in subsections (A) and (B)." *Barth v. Wisconsin Higher Education Corp.* (*In re Barth*), 86 B.R. 146, 149 (Bankr.W.D.Wis. 1988). "Section 523(a)(8) does not refer to 'student debtor' but applies to limit discharge of any 'individual debtor' from 'any debt' for a covered educational loan." *Pelkowski v. Ohio Student Loan Commission* (*In re Pelkowski*), 990 F.2d 737, 741 (3d Cir.1993). A court within the Second Circuit has interpreted the statute similarly. "The policy behind section 523 was to give all educational loans, [sic] special treatment in bankruptcy.

Namely, they were excepted from discharge." *Feenstra v. New York State Higher Education Services Corporation* (*In re Feenstra*), 51 B.R. 107, 110 (Bankr.W.D.N.Y. 1985) This understanding of the provision has been embraced by most of the recent court decisions. See *The Educational Resources Institute, Inc. v. Varma* (*In re Varma*), 149 B.R. 817, 818 (N.D.Tex.1992) ("[T]he court finds no Congressional intent to limit the nondischargeability exception to student borrowers alone"); *Dull v. Ohio Student Loan Commission* (*In re Dull*), 144 B.R. 370, 372 (Bankr.N.D.Ohio 1992) ("The plain language of § 523(a)(8) does not limit applicability to educational loans on which the student is the obligor"); *Education Resources Institute, Inc. v. Wilcon* (*In re Wilcon*), 143 B.R. 4, 5 (D.Mass.1992) ("[I]t is erroneous to limit the provisions of 11 U.S.C. § 523(a)(8) to loans made only to students"); *Hawkins v. Chase Manhattan Bank* (*In re Hawkins*), 139 B.R. 651, 653 (Bankr.N.D.Ohio 1991); *Hudak v. Union National Bank of Pittsburgh* (*In re Hudak*), 113 B.R. 923, 924 (Bankr.W.D.Pa. 1990) ("The fact that Debtor is not a student borrower is not controlling. The basic congressional purpose in enacting the § 523(a)(8) exception to dischargeability was to 'safeguard the financial integrity of educational loan programs'" citing *Reid v. First Tennessee Bank and Tennessee Student Assistance Corporation* (*In re Reid*), 39 B.R. 24 (Bankr.E.D.Tenn.1984)); *Educational Resources Institute, Inc. v. Selmonosky* (*In re Selmonosky*), 93 B.R. 785, 787 (Bankr. N.D.Ga.1988) ("[T]his court is compelled to find that § 523(a)(8) applies to nonstudent co-signer debtors, as well as student debtors"); *Education Resources Institute, Inc. v. Garelli* (*In re Garelli*), 162 B.R. 552, 554 (Bankr.D.Or.1994) ("There is strong evidence that Congress was not concerned with the nature of the debtor but, rather, was concerned with the nature of the debt", quoting *In re Koeppen,* Case No. 391–32208–H–13 Bankr.D.Or. October 10, 1991) (unpublished opinion).

█ The fact that Congress in debate focused on student/debtor abuse does not compel the Court to limit the statutory language to students. "The mere fact that the

statutory language extends the effect of the statute beyond the primary goal enunciated by Congress is not a valid reason not to give the statutory language full effect". *Education Resources Institute, Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 164 (Bankr.N.D.Cal.1989). The Court should not assume the role of the legislature by deviating from the words of the statute and creating new law. The Supreme Court warned against this form of judicial activism in *Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156, 175 (1930). The courts have stated clearly the necessary element for allowing judges to deviate from a statute's plain meaning. See *In re Hammarstrom*, 95 B.R. at 162 ("A court may not decline to follow the plain meaning of the statute merely because such language goes beyond Congress' primary stated goal in enacting that statute"). "To give statutory language other than its plain meaning, a court must find that a literal meaning of the statute would actively frustrate the purpose of Congress as revealed in unambiguous legislative history". *Id.* at 162–63. The legislative history demonstrates no legislative intent to target only student borrowers. In the absence of clear legislative intent the Court can only look to the words of the statute and interpret them according to their plain meaning.

Had the legislative history been crucial to discovering Congress' intent, the Court would still reject those decisions which differentiate between student and nonstudent debtors, for they ignore the overall problem that Congress was attempting to address. The legislative history clearly bears out that the broad purpose of the provision was "to keep our student loan programs intact." *See* remarks of *Representative Ertel* 124 Cong. Rec. 1791–92. No distinction, as to who the borrower was, emerged in any of the floor debates of the House of Representatives. *See* H.R. 8200, 95th Cong., 1st Sess. Sec. 523 (1977); H.R.Rep. No. 595, 95th Cong. 1st Sess. 132–164 (1977), U.S.Code Cong. & Administrative News 1978, p. 5787, 5918–5950. Thus, Congress' goal was to safeguard the viability of an educational loan program whose funds were to be reused upon the repayment of previous loans. The beneficia-

ries of this provision were not government institutions but future students whose education would be made possible through the continued recycling of funds. In support of section 523(a)(8) Representative Ertel warned that failure to pass this amendment would discriminate against future students by jeopardizing the funds available for their education. 124 Cong.Rec. 1791 (1978). Default by nonstudent borrowers is no less detrimental to the viability of these programs than default by students. This Court agrees with those who understand the legislative history of section 523(a)(8) as demonstrating Congress determination to "safeguard the financial integrity of educational loan programs by limiting the instances in which such obligations can be discharged in bankruptcy.... This goal is served by barring discharge of educational loans signed by parents." *In re Hammarstrom*, 95 B.R. at 164. Differentiating between student and nonstudent borrowers would encourage "students [to] have their parents obtain their educational loans, and have their parents file bankruptcy shortly thereafter." *In re Feenstra*, 51 B.R. at 110.

The fact that parent/co-signors are not featured in the legislative history is not surprising, since section 523(a)(8) was enacted in 1978 while 20 U.S.C. 1071 which extended educational loans to parents of students was not enacted until 1981. Therefore, although Congress may not have specifically contemplated the dischargeability of the loans of parent borrowers, the broad language of the provision and Congress' goal of rescuing the government loan program compel the Court to disallow the dischargeability of all educational loans subject to the exceptions specified in subsections 523(a)(8)(A) and (B). "The fact that parental educational loan programs may not have existed at the time the statute was enacted does not prevent the statute from applying to them at this time". *In re Feenstra*, 51 B.R. at 110. The MHEAC loan application clearly allows for such changes by conditioning the loan on the borrower's agreement that the loan be subject to all provisions of the Higher Education Act "as amended from time to time". *See reverse side of MHEAC Application and*

*Promissory Note for the Parent Plus Loan Program* section I, paragraph 6.

The debtors also contend that including nonstudent debtors in the provision is not in the spirit of the Bankruptcy Code's "fresh start" policy, and is antithetical to the rubric of construing dischargeability exceptions against the creditor and in favor of the debtor.

However, conflicting public policy cannot be used as a talisman against the force of clear legislative intent. "While it is true that section 523(a)(8) runs counter to the general 'fresh start' philosophy of the Bankruptcy Code, the same could be said of any exception to discharge." *In re Barth,* 86 B.R. at 149. Limitations on the reach of this important principle have already been recognized. "[F]resh start is only one of several policies underlying the Bankruptcy Code." *In re Pelkowski,* 990 F.2d at 745 (citing *Johnson v. Edinboro State College,* 728 F.2d 163, 164 (3d Cir.1984)). Section 523(a)(8) reflects public policy concerns which supersede the concerns embodied in the "fresh start" principle.

Little need be said of plaintiff's final argument regarding the lack of "benefit" received by parent obligors. Neither the statute nor the legislative history suggest a "benefit" test. Moreover, such a subjective standard might be said to discriminate against those parents who could not conscientiously declare that financial assistance towards the education of their children conferred no benefit upon them as parents.

The debtors' motion is denied. Settle order.