**In re Kelli M. O'BRIEN, Debtor.**

**Kelli M. O'Brien, Plaintiff,**

**v.**

**First Marblehead Education Resources, Inc. f/k/a the Education Resources Institute a/k/a TERI, Defendant.**

**Bankruptcy No. 02–36307 (CGM).
Adversary No. 02–7190.**

United States Bankruptcy Court,
S.D. New York.

Oct. 10, 2003.

## DECISION ON DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGEMENT

CECELIA MORRIS, Bankruptcy Judge.

The issue in this motion for summary judgment concerns the proper construction of 11 U.S.C. § 523(a)(8).[1] The question

---

1. 11 U.S.C. § 523(a)(8) states that "A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an

presented is whether a nonprofit institution that has guaranteed a Law Access Loan made by a private financial institution has "funded" the loan within the meaning of § 523(a)(8) for purposes of determining the dischargeability of the loan in a Chapter 7 bankruptcy filing. For the reasons set forth below, this Court has determined that a nonprofit institution which guarantees a student loan has in fact "funded" the loan within the meaning of § 523(a)(8) such that the loan indebtedness is not dischargeable in a Chapter 7 bankruptcy case.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(a); 157(a), (b)(2)(I) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.).

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding through Bankruptcy Rule 7056, permits summary judgment to be granted to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c), *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265(1986). The movant must establish that no material issue of fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

## STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 7056–1

Plaintiff Kelli M. O'Brien ("Debtor") failed to submit the required Local Bankruptcy Rule 7056–1(b)[2] Statement. As Defendant, The Educational Resources Institute ("TERI"), timely submitted a Rule 7056–1 Statement, Debtor is deemed to have admitted to the material facts contained in TERI's Statement. *See Sanders–Langsam Tobacco Co., Inc. v. Chemical Bank (In re Sanders–Langsam Tobacco, Co., Inc.),* 224 B.R. 1 (Bankr.E.D.N.Y.1998)(Cyganowski, J.); *Tillman v. Mason (In re C. Vernon Mason),* 191 B.R. 50, 53 (Bankr.S.D.N.Y. 1996).

## PROCEDURAL BACKGROUND AND UNDISPUTED FACTS

Debtor filed for relief under Chapter 7 of the Bankruptcy Code on May 30, 2002 and was granted a discharge on September 28, 2002. Debtor commenced the instant adversary proceeding by filing a complaint on October 8, 2002. Issue was

---

obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents."

2. Local Bankruptcy Rule for the Southern District of New York 7056–1 provides:

   (a) Upon any motion for summary judgment pursuant to Bankruptcy Rule 7056, there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit the statement shall constitute grounds for denial of the motion.

   (b) Papers opposing a motion for summary judgment shall include a separate, short and concise statement of each material fact as to which it is contended that there is a genuine issue to be tried.

joined by service of TERI's answer on December 31, 2002. An examination of the Rule 7056–1 Statement provided by TERI and the parties' submissions reveals that the following facts are not disputed.

On or about June 28, 1995, Debtor received a Law Access student loan from Key Bank in the principal amount of $15,325.29, plus interest. The student loan at issue is an educational benefit loan. TERI, a nonprofit institution, guaranteed the Debtor's loan. TERI states that it administers various student loan programs by contracting with different private, for-profit lending institutions. In this capacity, TERI conditionally agrees to guarantee loans made by those lenders pursuant to its educational loan program in the event of default. This was the means by which TERI guaranteed the Debtor's Law Access Loan. TERI also advances that without its guarantee, Key Bank would not have funded the Debtor's Law Access loan.

## SUMMARY OF THE PARTIES' ARGUMENTS

The sole issue to be determined herein is the correct interpretation of § 523(a)(8). The parties do not dispute the amount of Debtor's indebtedness, that the Debtor's Law Access loan is an "educational benefit loan" within the meaning of § 523(a)(8), that TERI guaranteed the loan at issue, or that TERI is a § 523(a)(8) nonprofit institution. Rather, the only issue is whether a nonprofit institution that has guaranteed an education benefit loan can be granted a nondischargeability determination under the terms of § 523(a)(8). The construction of this statute is purely a question of law and thus the instant controversy is proper-ly considered on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings through Bankruptcy Rule 7056.

The disputed statutory provision reads as follows:

"For an education benefit overpayment or loan made, insured or **guaranteed** by a governmental unit, or made under any program *funded* in whole or in part by a **governmental unit or nonprofit institution...**" (emphasis supplied).

The first section of § 523(a)(8) includes the term guaranteed, but not funded, and refers to governmental units only ("for an education benefit overpayment or loan made, insured or guaranteed by a government unit, or..."). The second part of § 523(a)(8) provides for programs funded by nonprofit institutions, with no explicit reference to programs guaranteed by nonprofit institutions ("...or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend"). Debtor interprets the use of the disjunction "or" in § 523(a)(8) to mean that a program guaranteed by a nonprofit institution falls outside the exception to discharge found in § 523(a)(8), because in order to "fund" a loan, the nonprofit institution must actually provide or disburse funds directly to the borrower and not merely guarantee those funds.[3] Debtor goes on to argue that the terms "funded" and "guaranteed" are not synonymous and reading the term "guaranteed" into the second clause of § 523(a)(8) that

---

3. In bankruptcy cases, the guarantor has often long since paid the primary lending agency on the guarantee upon the borrower's subsequent default. Thus, although the guarantor does not "disburse" funds directly to the borrower upon execution of the promis-sory note, a guarantor ultimately has paid the amount owed by the borrower to the primary lender at the time an adversary proceeding is brought seeking a dischargeability determination.

mentions nonprofit institutions renders the word "guaranteed" meaningless, mere surplusage in the first clause. Finally, Debtor advances a public policy argument regarding the cumulative impact of law school loan debt that has the consequence of providing new lawyers with a disincentive to work in public service organizations after graduation.

Defendant TERI argues that the plain language of § 523(a)(8) indicates that it is the program that must be funded by a nonprofit institution, not the loan itself. TERI further advances that the use of the disjunctive "or" in § 523(a)(8) does not preclude reading "guaranteed" into the second clause, and educational loans "guaranteed" by nonprofit institutions are "funded" by those institutions within the meaning of the statute.

## DISCUSSION

### Construction of § 523(a)(8) and The Use of "Or"

■ Debtor contends that because TERI, a nonprofit institution, did not *fund* the loan as required by the second part of § 523(a)(8), but rather *guaranteed* the loan, it is not entitled to the protection of § 523(a)(8). As the first part of § 523(a)(8) applies only to guarantees by a governmental unit, Debtor argues, and TERI is not a governmental unit, the debt is dischargeable.

Debtor relies on arguments based upon maxims of statutory construction, which Debtor avers support a conclusion that the statute's failure to include the word "guarantee" in the second part of § 523(a)(8) implies a nonprofit institution must actually fund the loan and not merely guarantee the loan for that loan to be nondischargeable in a bankruptcy proceeding. Specifically, Debtor argues that the following canons of statutory construction are violat-

ed by TERI's interpretation of § 523(a)(8), which interpretation seeks to introduce the word "guarantee" into the second clause of that provision:

a. Where the legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded;

b. A statute should be construed so that effect is given to all its provisions, so that no part will be rendered inoperative or superfluous, void or insignificant;

c. When the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended;

d. *Expressio unius est exclusio alterius*—the expression of one thing is the exclusion of another—an inference exists that all omissions should be understood as exclusions. As "guarantee" was omitted from the second half of 523(a)(8) an inference exists that it was excluded purposely by Congress; and

e. Words in a statute should be given their plain and ordinary meaning, and the word "funded" commonly refers to the provision of loan funds under the loan program, rather than the guarantee of those loans under the program that the lending banks actually funded.

■ The Debtor's statutory construction argument completely fails to account for 11 U.S.C. § 102(5), which provides instructions on exactly how the Bankruptcy Code should be interpreted. Section 102(5) states "[i]n this title ... (5) 'or' is not exclusive." Thus, the term "guaranteed" can not be assumed to have been intentionally omitted from the second part of § 523(a)(8), because the first and second

clauses of § 523(a)(8) are not mutually exclusive under § 102(5).

### The Appropriate Interpretation of the Word "Funded" in § 523(a)(8)

In support of its argument that a nonprofit institution that has "guaranteed" a loan is entitled to nondischargeability of its claim, TERI cites to an unpublished memorandum decision of former Bankruptcy Judge James L. Garrity, Jr. that is on point with the issue of construction of § 523(a)(8) considered herein. *See Adam H. Klein v. The Education Resources Institute (In re Klein)*, Ch. 11 Case No. 92–B–44249, Adv. No. 96–8828A (S.D.N.Y. April 29, 1997) (It must be noted that the *Klein* Court was also unpersuaded by debtor Klein's arguments, which are virtually identical to the arguments made by plaintiff herein, that the use of "or" in § 523(a)(8) precludes reading the word "guaranteed" into the second clause, as discussed *supra*. *Klein* at p. 9–10). Although the *Klein* memorandum decision is not binding legal authority on this Court, the decision is persuasive, particularly where, as here, there are no existing published decisions which will provide guidance as well as the unpublished memorandum decision. *See In re Mays*, 256 B.R. 555, 559 (Bankr.D.N.J.2000) (to the extent that an earlier unreported decision of a bankruptcy court in the same district addresses the identical issue in a case, the earlier opinion is precedent which may be persuasive but is not binding); *Dolph v. Pennsylvania Higher Educ. Assistance Agency (In re Dolph)*, 215 B.R. 832, 835 (6th Cir.BAP1998) (although unpublished decisions are not binding precedent, they can be cited if persuasive, especially where there are no published decisions which will serve as well); *see also generally*, Jason B. Binimow, J.D., Annotation, *Precedential Effect of Unpublished Opinions*, 105 A.L.R.5th 499 (2003).

In the *Klein* case, the debtor argued that "[TERI]'s claim falls outside the terms of the statute since it is a nonprofit institution that did not fund the Law Access Loan programs, but rather, merely guaranteed the loans." p. 7. The *Klein* court held that "[Debtor] misreads the plain language of the statute in asserting that the first and second clauses of § 523(a)(8) are mutually exclusive." p. 8. The Court pointed out that the two clauses deal with different issues. "The first clause deals solely with loans guaranteed or insured by governmental units. The second clause has a broader and different focus since it encompasses governmental units and nonprofit institutions and focuses on loan programs and not on particular loans." p. 8. Thus, the Bankruptcy Court in *Klein* reasoned that "funded" had a concomitantly broad and inclusive meaning, which embraced a loan guaranteed by a nonprofit institution. The *Klein* court cited *Educ. Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 165 (Bankr.N.D.Cal.1989) with approval to demonstrate this proposition. "Congress intended to include within section 523(a)(8) all loans made under a program in which a nonprofit institute plays *any meaningful part in providing funds.*" *Id.* at 165 (emphasis supplied). The Court in *Klein* held that the guarantee of the loan constituted a "meaningful part in providing funds" and thus a guaranteeing nonprofit institution could be considered to have "funded" the educational loan. This Court agrees that the word "funded" should be liberally construed to include "any meaningful contribution" to the provision of the loan, *including* the guarantee of the loan.

In this case, TERI states in the Affidavit of Michael Beatty, Esq. that without TERI's guarantee, Key Bank would not have loaned the funds to debtor. Debtor also admits that TERI "facilitate[d] the

extension of student loan credit by helping to induce for-profit lenders like Key Bank to make loans to credit worthy students..." Thus the TERI guarantee played a meaningful part in providing the funds to Debtor and TERI can be said to have "funded" the Law Access Loan at issue within the ambit of § 523(a)(8).

Finally, Debtor argues that public policy mitigates in favor of granting his client a discharge of her student loan debt because she does not fit the "profile of a student loan abuser" but instead is a public interest lawyer whose "substandard" salary does not permit her to live comfortably while paying off her large student loan debt. The Court is not unsympathetic to the plight of public interest attorneys saddled with large educational loan debt. In fact, the Court is well aware of the disparity between government pay and private law firm salaries. Interestingly, Debtor included as an exhibit to her submissions on this motion a study, prepared, in Debtor's view, significantly, by defendant TERI. The TERI study, entitled "Graduating into Debt: the Burdens of Borrowing for Graduate & Professional Students," details the significant repayment burdens encountered by professional school graduates and the particularly adverse impact such burdens have on those graduates who choose the less lucrative public service oriented fields. The study shows that law school graduates choosing public interest jobs must pay up to one quarter of their income on student loan payments, which discourages graduates from entering the various fields of public interest law. "From Paper Chase to Money Chase: Law School Debt Diverts Road to Public Service," a report sponsored by the Partnership for Public Service, Equal Justice Works and the National Association for Law Placement, shows that two thirds of law school graduates in 2002 could not afford to consider taking low-paying jobs in the public service because of student loan debt problems. In fact, the average law school graduate faces total educational debt in the amount of $80,000, which results in a daunting monthly repayment of $900 for a period of ten years. *See* New York State Bar Association Special Committee on Student Loan Assistance for the Public Interest, *Attracting Qualified Attorneys to Public Service* (June 2002); *available at www.nysba.org/Content/NavigationMenu/Attorney Resource* (last visited on October 10, 2003). The New York Bar Association report also indicates that the inability of government and public interest employers to attract recent graduates or to keep highly qualified attorneys is undermining the legal services provider system and injuring the government at all levels. This Court shares the legal profession's growing concern that the rising cost of a legal education will result in a deficit of public interest lawyers providing legal assistance to the underserved members of our society because of an inability to pay law school loan debt with public interest salaries.

■ Nonetheless, "[t]he Court should not assume the role of the legislature by deviating from the words of the statute and creating new law." *Karben v. Elsi (In re Karben)*, 201 B.R. 681, 684 (Bankr. S.D.N.Y.1996). "Congress' goal was to safeguard the viability of an educational loan program whose funds were to be reused upon repayment of previous loans." *Id.* at 684. Obviously, in order to have funds available to lend to future borrowers, past borrowers must repay their obligations. The Court would be pleased to see a Congressional amendment to § 523(a)(8) that would permit this Court to consider the Debtor's service to the community as a public interest lawyer in determining the dischargeability of law school loan debt. The debtor may have with all good intentions attempted to repay her loans, and may for admirable reasons have been unable to do so. Such inten-

tions and motivations, short of also satisfying the "undue hardship" standard which is not at issue on this motion, do not defeat the legislative purpose in holding student loans of this nature nondischargeable, however. This Court will abide by Congress' express intentions that education benefit loans guaranteed or funded by nonprofit institutions are nondischargeable.

### CONCLUSION

For the foregoing reasons, TERI's Motion for Summary Judgment on the issue of the construction of § 523(a)(8) is granted.