**In re Beverly DAVIS, Debtor.**

**Beverly Davis, Plaintiff,**

**v.**

**The Finance Committee of Cardinal Spellman High School, Defendant.**

**Bankruptcy No. 03–14447(BRL). Adversary No. 003–90501(BRL).**

United States Bankruptcy Court, S.D. New York.

July 9, 2004.

DC 37 Municipal Employees Legal Services Plan, by Stephen Shepard, of Counsel, Joan Beranbaum, Sheldon Barasch, New York City, Attorneys for Debtor.

Stephen P. Dewey, Ossining, NY, Attorney for the Defendant.

### MEMORANDUM DECISION AND ORDER DETERMINING DISCHARGEABILITY UNDER SECTION 523(a)(8) OF THE BANKRUPTCY CODE

BURTON R. LIFLAND, Bankruptcy Judge.

This action is brought by Beverly Davis ("Debtor") against the Finance Committee of Cardinal Spellman High School ("Spellman"). Debtor seeks to determine the dischargeability of a debt owed to Spellman pursuant to section 523(a)(8) of title 11, United States Code (the "Bankruptcy Code"). Spellman posits, inter alia, that

irrespective of evidence, or lack thereof, of an educational loan, receipt of an "educational benefit" is sufficient to render a debt non-dischargeable.

## Background

Debtor enrolled her daughter, Denise Williams, at Cardinal Spellman High School from September 1, 2000 through June 30, 2001. Because she was unable to make the tuition payments of approximately $4,150.00 upfront, Debtor was given an 11–month payment schedule through the school's agent, Tuition Management Systems ("TMS"). The Schedule spread out the costs of tuition over the course of 11 months without interest and did not provide for an exchange of funds or for an extension of credit. The document evidencing the proposed payment schedule is not signed by the Debtor. Also unsigned is an internal "Finance Record" card which simply contains information such as the student's name and address and names Debtor as responsible for the student's finances. The date of the "Finance Record" is unclear.

Debtor failed to make the payments pursuant to the schedule over the course of the school year although she gave oral assurances to Spellman that payments would be made. Despite the lack of payment, Spellman allowed Debtor's daughter to attend classes without setting any conditions or deadlines for the tuition payments beyond which Debtor's daughter would be expelled from the school.

On September 18, 2002, Spellman obtained a judgment in the Civil Court of the City of New York for $7,584.58 against Debtor. According to Spellman, Debtor made no attempt to resolve the matter despite notices sent to her. On October 23, 2002, Spellman issued an income execution and information subpoena with restraining notice to enforce the judgment. On November 21, 2002, the parties entered into a Stipulation of Settlement that set forth a plan for Debtor to pay the full judgment plus interest in fifty-dollar installments on the first of every month. Debtor then made three voluntary payments towards the settlement and paid an additional $340.00 through the Office of the City Marshal.

On July 11, 2003, Debtor filed for relief under chapter 7 of the Bankruptcy Code. Debtor listed the debt owed to Spellman on her schedules. No complaint objecting to discharge was filed, and, on October 17, 2003, Debtor received a discharge of her debts.

While Spellman did not file a complaint objecting to the discharge of the debt owed to it, Debtor preemptively commenced this adversary proceeding on October 6, 2003, to establish that the tuition debt is dischargeable under section 523(a)(8) of the Bankruptcy Code. Debtor now seeks summary judgment relief. Spellman opposes the motion and requests dismissal of the complaint.

## Discussion

### *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure ("FRCP"), made applicable to bankruptcy proceedings by rule 7056 of the Federal Rules of Bankruptcy Procedures, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994).

On a summary judgment motion, the moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Certain Funds on Deposit in Scudder Tax Free Inv. Account No. 2505103*, 998 F.2d 129, 131 (2d Cir.1993).

### Section 523(a)(8)

Here, both parties agree that there are no genuine issues of material fact. The only issue is whether the debt owed to the Spellman constitutes an "educational loan" under section 523(a)(8) of the Bankruptcy Code and, if so, whether it is a non-dischargeable debt.[1]

■ Courts have long recognized that bankruptcy is intended to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh. *See Boston Univ. v. Mehta (In re Mehta)*, 310 F.3d 308, 311 (3d Cir.2002); *Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir.2000). "Yet there are circumstances where giving the debtor a fresh start in life is not the paramount concern and protection of the creditor becomes more important." *Renshaw*, 222 F.3d at 86. For that reason, Congress created several exceptions to the general rule that debts may be discharged in bankruptcy. *Id.* However, in large part because of bankruptcy's underlying concern for affording a new beginning, statutory exceptions to discharge are generally construed "narrowly against the creditor and in favor of the debtor." *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir.1993). The creditor opposing discharge therefore has the burden of establishing that an obligation is not dischargeable. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Section 523(a)(8) of the Bankruptcy Code provides in relevant part that an individual debtor will not receive a discharge from any debt "for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The purpose of restricting dischargeability of certain educational benefits and loans under section 523(a)(8) is to avoid abuse by students who may attempt to discharge such loans upon graduation, and to prevent harm to the governmental and nonprofit entities that provide educational loans to students. 4 Lawrence P. King et al., Collier on Bankruptcy, ¶ 523.14[1] (15th ed. rev.2004). By enacting section 523(a)(8), Congress sought to protect educational loan programs for future students threatened by possible abuses of the bankruptcy process, as well as the creditors who help students pursue their education through loan programs. *In re Renshaw*,

---

1. Although Spellman refers to fraudulent misrepresentations under section 523(a)(2) of the Bankruptcy Code, no timely objection to discharge of its debt was filed, and accordingly Spellman is barred from asserting that claim at this late date in this proceeding.

Spellman also cites Debtor's failure to establish undue hardship to except the alleged loan from discharge. However, as discussed below, this debt is not a loan under section 523(a)(8), and thus, undue hardship is not an issue.

222 F.3d at 87; *Boston Univ. v. Mehta (In re Mehta)*, 310 F.3d 308, 311–12 (3d Cir.2002).

■ Section 523(a)(8) applies even if the debtor is the parent of the beneficiary, and not the student herself. The fact that the debtor requiring the "fresh start" is not the student who benefited from the educational loan is not an issue. Section 523(a)(8) looks at the purpose of the loan, not the beneficiary of the education. "The statutory language [of § 523(a)(8)] draws no distinction between obligors on an educational loan." *Karben v. Elsi, First Nat'l Bank (In re Karben)*, 201 B.R. 681, 683 (Bankr.S.D.N.Y.1996). Therefore, the fact that the Debtor in this case is the mother of the student rather than the student is of no consequence.

■ Section 523(a)(8) does not specifically define "loan", but the Second Circuit has held that for there to be a loan three conditions must be met. *Renshaw*, 222 F.3d at 88; *In re Grand Union Co.*, 219 F. 353, 356 (2d Cir.1914). First, there must be a contract. Second, that contract must provide for a transfer of money, goods, or services from one party to the other. Third, the receiving party must agree to pay for the money, goods, or services at a later date. *Renshaw*, 222 F.3d at 88; *Grand Union*, 219 F. at 356. A simple failure to pay a bill when due does not create a loan. *Renshaw*, 222 F.3d at 88. An arrangement whereby a school simply permits a student to attend its program, although it can forbid attendance for outstanding tuition bills, does not create a non-dischargeable loan. *Id.* There must be a formal express agreement that extends a loan to the student, whether it takes the form of a written loan agreement or a promissory note. *Id;* Collier on Bankruptcy at ¶ 523.14[1].

■ This case is on all fours with the Second Circuit's decision in *Renshaw. Renshaw* involved a consolidated appeal of two separate cases. In the first case, the student signed a "Reservation Agreement" with the college in which the college agreed to hold a place open for the student, provided he paid amounts due, and agreed not to charge more for tuition that the amount in effect at registration. *Renshaw*, 222 F.3d at 84–85. The student failed to pay the amounts due, but the college nevertheless allowed him to register and to attend classes. The student later filed for bankruptcy and argued that this debt was dischargeable. *Id.* at 85. In the second case, a student regularly paid his tuition until the fall 1993 semester. Despite the nonpayment, the college permitted him to attend without having prepaid fully his tuition. After the college contacted him regarding his "past due balance," the student acknowledged the obligation and made payments but did not pay in full. After the college obtained a default judgment against him for the amount due, the student filed for bankruptcy and argued that the debt was dischargeable. *Id.* The court then determined that, in both cases, the colleges could establish nothing more than a failure to pay a bill when due. Neither situation met the definition of a loan because the colleges neither agreed to extend credit nor permitted the student to attend classes in return for payment at a later date. *Id.* Rather, both students "unilaterally decided not to pay tuition when it came due." *Id.* The court further noted that it could not find a loan "[w]ithout an agreement by the lender to make a transfer in return for a future payment." *Id.* at 89. The court added that tuition that fell due "was not thereby transformed into a loan", *id* at 90, and should not be misconstrued as an overpayment by the school. *Id.* at 92 *citing Alibatya v. N.Y. Univ. (In re Alibatya)*, 178

B.R. 335, 338 (Bankr.E.D.N.Y.1995). A debt due for non-payment of tuition in the absence of a prior agreement "is materially indistinguishable from the debt that would be due to a family dentist for non-payment of his bill. [The school] has no greater remedy than that available to any other creditor who suffers from the non-payment of his bill." *Seton Hall Univ. v. Van Ess (In re Van Ess)*, 186 B.R. 375, 381 (Bankr.D.N.J.1994).

Similarly, in this case, the debt did not arise out of an educational loan. Instead, Debtor over time failed to pay the tuition when due, and the school allowed the student to attend classes despite the lack of payment. There is no evidence of a prior agreement signed by the parties agreeing to a loan. In fact, there are no signed documents prior to the occurrence of the debt. Debtor was given a tuition payment schedule similar to the agreement in *Renshaw*. It was a payment plan option, not a loan program or a promise by the school to extend credit. There was no receipt of any funds by Debtor and no extension of credit by Spellman. Furthermore, although Spellman alleges that Debtor told it that the money would be paid, such oral reassurances, absent any negotiating or express extension of credit by the school, could not be construed as a loan agreement. This was, as in *Renshaw*, a unilateral decision not to pay the tuition when it was due, and not a prior agreement to a loan.

Upon Debtor's failure to pay, Spellman obtained a judgment and sought to execute on wages. In response, Debtor signed a Stipulation of Settlement on November 21, 2002. This agreement was signed after the debt was incurred, and after a judgment entered against her. Debtor was not repaying a loan, nor was she returning funds that were transferred to her through a prior agreement with the school. *Ren-*

*shaw*, 222 F.3d at 91; *Nelson*, 188 B.R. at 33. The settlement was signed in order to satisfy the judgment, and it was not a loan.

Spellman erroneously relies on *In re Stone*, where the court held that a promissory note signed after the student's attendance could constitute a loan. *See Stone v. Vanderbilt Univ. (In re Stone)*, 180 B.R. 499, 502 (Bankr.M.D.Tenn.1995). However, the Second Circuit in *Renshaw* expressly rejected the holding in *Stone*. In finding that the agreement must be signed prior to the student's attendance, the court stated: "We decline to adopt the reasoning of *In re Stone* ... which held that a promissory note signed after the student's withdrawal from the university created a loan." *Renshaw*, 222 F.3d at 90.

 Spellman also argues that because the debt arose out of an educational benefit, it is non-dischargeable pursuant to section 523(a)(8). Section 523(a)(8) provides that a debt will not be dischargeable if it constituted "an educational benefit overpayment or loan made ...". 11 U.S.C. § 523(a)(8). Spellman interprets this language to include educational benefits as a third category of obligation that is excepted from discharge, in addition to an "overpayment" and a "loan." However, the Second Circuit specifically rejected this interpretation of the statute. *In re Renshaw*, 222 F.3d at 92. As explained by the *Renshaw* court, the term "educational benefit" does not stand on its own and must be read as qualifying the words "overpayment or loan." *Id.* "The sensible reading of [section 523(a)(8)] is therefore that it includes *loans or overpayments of educational benefits.*" *Id.* (emphasis added). Moreover, section 523(a)(8) also excepts from discharge "obligation[s] to repay funds received as an educational benefit, scholarship or stipend." 11 U.S.C. § 523(a)(8). However, the Second Circuit held in *Renshaw* that

when the student did not receive any funds, as here, this exception from discharge does not apply.

## Conclusion

For the foregoing reasons, the debt incurred is indistinguishable from any other debt arising out of the nonpayment of a bill. It is not an educational loan, and it does not fall within the exception of section 523(a)(8) of the Bankruptcy Code. Accordingly, Debtor's motion for summary judgment is granted, and Spellman's request to dismiss the complaint is denied.

IT IS SO ORDERED.