# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 18-6011

_____

In re: Richelle A. Page

*Debtor*

------------------------------

Richelle Angela Page

*Plaintiff - Appellant*

v.

JP Morgan Chase Bank

*Defendant*

National Collegiate Student Loan Trust 2006-1

*Defendant - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 24, 2018
Filed: November 20, 2018

_____

Before SALADINO, Chief Judge, DOW and SANBERG, Bankruptcy Judges.

_____

Dow, Bankruptcy Judge

Debtor Richelle Page appeals from the Bankruptcy Court's order granting summary judgment in favor of the National Collegiate Student Loan Trust ("NCSLT") and denying Debtor's motion for summary judgment seeking a discharge of her NCSLT debt pursuant to 11 U.S.C. §523(a)(8). For the reasons that follow, we reverse and remand.

## FACTUAL BACKGROUND

The Debtor attended St. Louis Community College in the spring semester of 2006, and paid for her tuition with financial aid. In response to a loan "preapproval notice" she received from Chase Bank ("Chase"), the Debtor executed a Loan Request/Credit Agreement (the "Agreement") requesting a $30,000 loan through the "Education One Undergraduate Loan" program. She acknowledged as part of the agreement that she would be responsible for repaying any funds which were not used for educational expenses related to the community college. The instruction sheet directed applicants to submit the agreement either by regular mail or expedited delivery to The Educational Resources Institute, Inc. ("TERI"), a non-profit organization.

The loan proceeds were disbursed to the Debtor (the "Debt" or the "Loan"). The Loan was subsequently sold to NCSLT. Despite the restriction in the Agreement, the Debtor used the proceeds to pay for non-educational expenses.

The Debtor filed bankruptcy in 2010. She listed the Debt in her Schedules. The bankruptcy court entered a discharge order providing that certain debts,

2

including those for most student loans, were not discharged. Six years later, the Debtor filed her complaint seeking a determination that her student loan debt was not excepted from discharge. The NCSLT moved for summary judgment and the Debtor filed her own motion for summary judgment. The bankruptcy court granted summary judgment in favor of NCSLT and ordered that the Debt be excepted from discharge pursuant to §523(a)(8). Specifically, the court concluded that there was no genuine issue of material fact in dispute as to whether the Loan was an "educational loan" and as to whether TERI "funded" the Loan (program) for purposes of §523(a)(8)(A)(i). The Debtor appeals.

## STANDARD OF REVIEW

We review the Bankruptcy Court's determination of nondischargeability *de novo*. *Educational Credit Management Corporation v. Jesperson*, 571 F.3d 775, 779 (8th Cir. 2009). Findings of fact on which the legal conclusions are based are reviewed for clear error. *Id.*

## DISCUSSION

### Was the Loan an "educational loan" as contemplated by §523(a)(8)?

Section 523(a)(8) of the Bankruptcy Code provides for certain exceptions to discharge, including an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution. 11 U.S.C. §523(a)(8)(A)(i). The Debtor states in her Brief on appeal that the Loan was not an "educational loan" but rather a routinely dischargeable consumer loan because of its alleged attributes (*e.g.*, Chase's security interest in the Loan, the requirement of co-signers, and a substantial origination fee). However, the Debtor cited no cases holding that the

3

commercial features described disqualify a loan from being an "educational loan" under §523(a)(8).

Rather than focus on a loan's features, courts routinely look to the purpose of a loan to determine whether it is "educational." *See, e.g., In re Murphy*, 282 F.3d 868 (5th Cir. 2002); *In re Jean-Baptiste*, 584 B.R. 574, 585 (Bankr. E.D.N.Y. 2018); *In re Busson-Sokolik*, 635 F. 3d 261, 266 (7th Cir. 2011). The debtor in *Busson-Sokolik* challenged whether the loan could be properly considered "educational" as required to bring it within §523(a)(8)(A). The court applied the purpose test and found that the following facts established that the loan was indeed educational: the loan was part of a package that included scholarship and grant money toward completion of the debtor's education at the school, the promissory note was signed while the debtor was a student, the debtor had to be a student to be eligible for the loan, and the loan proceeds were deposited into the debtor's student account at the school. *Id.* at 267. The bankruptcy court here applied a similar analysis and concluded that there was no genuine issue of material fact in dispute as to whether the Debt was for an "educational loan" based largely on the many education-related terms in the Agreement: identification as an "Undergraduate Loan," made through the "Education One" Loan Program, covering an "Academic Year," while debtor is enrolled at a specific "School." In addition, NCSLT's witness attested that the Loan was "for educational purposes." We agree that the court made ample findings based on undisputed facts to support its conclusion that the Loan was an "educational loan" within the meaning of §523(a)(8)(A).

*Did the bankruptcy court err in drawing the inference in NCSLT's favor that TERI funded the program?*

The Debtor also argues on appeal that the bankruptcy court erroneously inferred (in NCSLT's favor) that TERI expended resources in processing some of the bank's mail and thereby funded the loan program, stating since "TERI served in a plenary capacity as the sole entity to which loan documents were submitted," it expended its resources on the administration of the loan program and thereby funded it. The Debtor asserts that the bankruptcy court reduced the meaning of "funded" so that any entity that plays even a marginal role in a loan program can be said to have funded it.

When considering a motion for summary judgment, the court is required to review the record and draw all reasonable inferences in favor of the non-movant. *Foster v. John-Manville Sales Corp.,* 787 F.2d 390, 391-92 (8th Cir. 1986). These inferences must then be considered in light of any competing inferences. *See, e.g., In re Sunnyside Timber, LLC*, 413 B.R. 352, 363 (Bankr. W.D. La. 2009)(if a reasonable trier of fact could find that the defendants engaged in collusive conduct after considering any inferences of non-collusive conduct supported by the evidence, the court should not grant summary judgment). Where the parties file cross-motions, the standards by which the Court decides the motions do not change. *Livingston v. South Dakota State Medical Holding Co., Inc.,* 411 F. Supp. 1161, 1163 (D.S.D. 2006)(citing *Heublein Inc. v. United States,* 996 F.2d 1455, 1461 (2nd Cir.1993)). Each motion must be evaluated independently, "taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* In this case, both parties filed competing summary judgment motions, so the question before us is whether the inference drawn by the

5

court (that TERI funded the program) was appropriate, reasonable and supported by the evidence.

The widely-held view among courts considering this issue is that the definition of "funded" should not require that actual money be placed in some type of account. *In re Gakinya*, 364 B.R. 366, 374 (Bankr. W.D. Mo. 2007). Instead, the test adopted by many courts is whether the nonprofit entity played any meaningful part in procurement of the loans under the program.[1] *In re O'Brien*, 299 B.R. 725, 730 (Bankr. S.D.N.Y. 2003)(citing *In re Hammarstrom*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989)("Congress intended to include within section 523(a)(8) all loans made under a program in which a nonprofit institution plays any meaningful part in providing funds.")). *See also In re Sears*, 393 B.R. 678, 680-81 (Bankr. W.D. Mo. 2008)(rather than focus on financial role of the nonprofit, courts should place emphasis on the institution's degree of involvement in administrative functions of the program). The cases applying the so-called "meaningful part" test hinge on whether the non-profit entity committed financial resources to the loan program, or contributed something of value to make the program successful. *See, e.g., In re Merchant*, 958 F.2d 738 (6th Cir. 1992)(non-profit's agreement to purchase all defaulted student loans from for-profit lender held to be sufficient);

---

[1] At least one court has concluded that the "meaningful part" test should not be applied. *In re Pilcher*, 149 B.R. 595, 600 (9th Cir. BAP 1993)("The addition of the meaningfulness requirement is purely a judicial creation. No qualifying language was included by Congress to establish minimum levels of participation."). The issue of whether the bankruptcy court erred in applying the "meaningful part" test is not before this Panel. However, regardless of whether that test is applied, there is insufficient evidence to support a finding that TERI funded this loan program.

*In re Pilcher*, 149 B.R. 595 (9th Cir. BAP 1993)(sufficient that some participants of the loan program were nonprofit institutions).

A number of courts have held that a non-profit institution's guarantee of the loans is sufficient to constitute a "meaningful contribution" by the nonprofit. *See, e.g., In re McClain*, 272 B.R. 42 (Bankr. D.N.H. 2002); *In re Jean-Baptiste*, 584 B.R. at 584 (loans ultimately purchased or guaranteed by non-profit entities generally excepted from discharge).[2] The parties in this case disputed whether TERI in fact guaranteed this Loan. In the affidavit of Bradley Luke, custodian of records for NCSLT, he states that the Loan was guaranteed by TERI. The Debtor moved to strike that statement. The bankruptcy court denied the motion to strike as moot, stating that the court did not rely on that statement in rendering judgment.[3] The bankruptcy court declined to resolve the issue and adjudicated summary judgment without making that determination. It concluded that TERI played a meaningful part in the program regardless of whether it guaranteed the Loan.

The only role mentioned by the court was that "TERI served in a plenary or near-plenary capacity as the sole entity to which loan documents were submitted to

---

[2]*But see In re Wiley*, 579 B.R. 1 (Bankr. D. Me. 2017)(holding that guarantee by nonprofit institution is not, by itself, enough). This is the minority view.

[3] In addition, there was guaranty language in Paragraph L.11 of the Agreement: "I acknowledge that the requested loan is subject to the limit on dischargeability in bankruptcy contained in Section 523(a)(8) of the United States Bankruptcy Code. Specifically, I understand that you have purchased a guaranty of this loan, and that the loan is guaranteed by [TERI], a non-profit institution." It is unclear if the bankruptcy court considered this acknowledgment, as it made no mention of it in its opinion.

the Loan Program by regular mail or overnight delivery." While the instructions for submitting the application provided a P.O Box Number and address for TERI, the facsimile number was not identified as TERI's. It is unclear, therefore, whether TERI received all of the loan applications. In addition, the bankruptcy court admitted that the record did not reflect the method by which the Debtor submitted her Agreement – just that it was submitted. Also, NCSLT does not assert that it was TERI employees who processed the applications, merely that TERI spent money on the facilities where the processing occurred.

In general, any evidence presented in connection with §523(a)(8) must be viewed with the Congressional intent that exceptions to discharge be narrowly construed against the creditor and liberally in favor of the debtor in order to provide the debtor with comprehensive relief from the burden of his indebtedness. *In re Olson*, 454 B.R. 466, 472 (Bankr. W.D. Mo. 2011). This principle applies equally to student loan exceptions to discharge. *See, e.g., In re Johnson*, 215 B.R. 750, 753 (Bankr. E.D. Mo. 1997), aff'd, 218 B.R. 449 (B.A.P. 8th Cir. 1998)(applying, in the context of student loan debt, the well-established principal that exceptions to discharge are to be narrowly construed).

Here, the bankruptcy court's broad construction of the term "funded" is inconsistent with Congress' intent that exceptions to discharge be narrowly construed. The evidence on which the bankruptcy court's conclusion that TERI funded the Loan is based is scanty. It was not established that TERI guaranteed the loans, processed the loans, or even received all the loans. TERI merely provided an address to which applications could be delivered, and that is not sufficient to support the inference that TERI "funded" this loan program. Further, that

8

inference was drawn in favor of NCSLT, the movant, rather than the Debtor as legally required.

We are not in a position to make a factual finding on the issue of TERI's guarantee of the Loan since the bankruptcy court declined to make that finding. We, therefore, remand this issue to the court for that determination and its legal significance to the Loan's dischargeability.

## CONCLUSION

Based on the record below and considering the established case law on the meaning of "educational loan," we hold that the bankruptcy court did not err in characterizing the Debtor's Loan as an "educational loan" within the meaning of §523(a)(8)(A)(i). However, we conclude that the bankruptcy court's inference in NCST's favor that TERI "funded" the loan program was not reasonable as it was not supported by the evidence. We, therefore, reverse and remand the issue regarding TERI's guarantee of the Loan and funding of the program for further consideration in accordance with this opinion.

Accordingly, the judgment of the bankruptcy court is reversed and remanded.

———————————————