# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

05-6041EM
06-6011EM

_____

|  |  |  |
|---|---|---|
| In re : Ralph D. Schachtele; | * | |
| Mildred A. Schachtele, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Tina Livestock Sales, Inc., | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Objector - Appellant, | * | Eastern District of Missouri |
| | * | |
| v. | * | |
| | * | |
| Ralph D. Schachtele; | * | |
| Mildred A. Schachtele, | * | |
| | * | |
| Debtors - Appellees. | * | |

_____

Submitted: May 1, 2006
Filed: May 11, 2006

_____

KRESSEL, Chief Judge, FEDERMAN and VENTERS, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

PROCEDURAL BACKGROUND

These are appeals from Orders of the United States Bankruptcy Court for the Eastern District of Missouri[1] issued on July 6, 2005, and February 6, 2006, in which the court granted the Debtors' Motions to Amend their Chapter 13 Plan. After oral argument in these appeals, Appellant Tina Livestock Sales, Inc., filed a Dismissal of Appeal in Case No. 05-6041, requesting that we deny as withdrawn or moot all actions pending on appeal and that we dismiss the appeal. Although this pleading was filed in only one of the cases pending before us, we construed it as a request that we dismiss both appeals.

On March 31, 2006, we issued an Order to Show Cause announcing that we would dismiss the appeals, but ordering Tina Livestock and its counsel to show cause why they should not be sanctioned for filing a frivolous appeal. Tina Livestock and its counsel responded to the Order to Show Cause, and Debtor-Appellees Ralph and Mildred Schachtele filed a reply. For the reasons that follow, we find that these appeals were frivolous, that they should be dismissed, and that sanctions are warranted in this case.

FACTUAL BACKGROUND

Debtors Ralph D. Schachtele and Mildred A. Schachtele operate a business in which they raise dogs for research purposes. They filed a voluntary Chapter 13 bankruptcy case on September 10, 2004, along with their original Chapter 13 Plan. Among their secured claims, the Debtors listed a business debt owed to Bank of Cairo and Moberly (BCM) which was secured by the Debtors' business assets, including livestock, and a second mortgage on the real estate encompassing the farm property on which they operated the business and their home. Debtors listed a total of

---

[1] The Honorable Kathy A. Surratt-States, Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of Missouri.

approximately $82,000 in general unsecured debt, including an $11,000 obligation owed to Tina Livestock on a bad check for $18,005 that the Debtors wrote to Tina Livestock in March of 2000. At the time the bankruptcy Petition was filed, the Debtors owed Tina Livestock $10,365 on the bad check because the Debtors had repaid some of the funds prepetition. Tina Livestock failed to file a timely proof of claim in the case, however.

In their original Chapter 13 Plan, the Debtors proposed to cram down BCM's secured claim. The Debtors stated they owed BCM $55,354 on this loan and the Plan proposed to cram the bank down to $17,135, which was the estimated equity in the property securing the claim. The Plan proposed to pay the full value of the secured claims over the life of the Plan and proposed to pay unsecured creditors approximately 10% of their claims.

Tina Livestock did not file an objection to the original Plan, but joined an objection filed by BCM. BCM had alleged that the Debtors undervalued their assets on their schedules as compared to a personal financial statement they had recently given to BCM. In addition to the "me too" objections in Tina Livestock's pleading, Tina Livestock also asserted that the Plan was not proposed in good faith since the Debtors were proposing to pay their long-term real estate debt in full over the life of the Plan, while only proposing to pay unsecured creditors approximately 10%. Tina Livestock also said it was "concerned" because its debt was the result of a bad check.

The bankruptcy court held a hearing on confirmation on January 27, 2005. Before the hearing, the Debtors and BCM resolved their dispute and BCM withdrew its objection to the original Plan. However, even though Tina Livestock had only raised its objections on BCM's coattails through the untimely "me too" objection, counsel for Tina Livestock appeared at the confirmation hearing and raised its additional objections to confirmation. The bankruptcy court overruled Tina Livestock's objections and the original Plan was confirmed on February 2, 2005.

3

On March 11, 2005, the Trustee filed a Notice of Lack of Feasibility regarding the confirmed Plan. In response, the Debtors filed a Motion to Amend their Plan, along with a First Amended Plan which increased the Plan's duration from 36 to 44 months. Although the First Amended Plan did not change the fact that secured claims would be paid in full over the life of the Plan, and unsecured creditors would still receive approximately 10% of their allowed claims, the First Amended Plan appeared to increase the amount to be paid to BCM on its crammed-down secured claim, apparently because there had been a determination that the value of the collateral securing BCM's claim was higher than estimated in the original Plan.

On May 11, 2005, Tina Livestock filed an Objection to Confirmation of the First Amended Plan. In addition, having then realized that it failed to file a proof of claim in this case, Tina Livestock filed a Proof of Claim in the amount of $10,365.24 on May 12, 2005, along with a Motion to Allow its Claim out of time. The Debtors and the Chapter 13 Trustee objected to the allowance of the claim as untimely.

In its Objection to Confirmation of the First Amended Plan, Tina Livestock argued that the First Amended Plan was not proposed in good faith and violated § 1325(b)(1)(B), which requires a debtor to pay all of the debtor's projected disposable income to a plan for three years.[2] In sum, Tina Livestock complained again that the Debtors were proposing to pay their long-term real estate debt in full during the life of the Plan, which results in the debt to BCM being paid off earlier than was provided under the BCM loan documents,[3] while paying unsecured creditors only about 10%

---

[2] 11 U.S.C. § 1325(b)(1)(B). This provision of the Bankruptcy Code was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 199 Stat. 23 § 418 (Apr. 20, 2005). For Chapter 13 cases filed after October 17, 2005, the Code now requires a debtor to commit all of the debtor's projected disposable income for the "applicable commitment period," rather than the three year period previously required. Because this case was filed prior to October 17, 2005, the three-year period is applicable.

[3] Under the terms of the loan documents, BCM's loan matured in 2012.

4

of their claims. Tina Livestock alleged further that, because its claim was based on a bad check, it would have been nondischargeable in a Chapter 7 case under § 523(a)(2) and (4).

On July 6, 2005, the bankruptcy court granted the Debtors' Motion to Amend their Chapter 13 Plan and confirmed the First Amended Chapter 13 Plan over Tina Livestock's objection. Tina Livestock appealed. In the meantime, while that appeal was pending, on December 29, 2005, the Debtors moved for an order permitting them to file a Second Amended Plan to again extend their payments due to an unexpected loss of income and cash flow. Other than the extension of the Plan's duration, no other plan provisions were modified through the Second Amended Plan. Again, Tina Livestock objected on the same grounds asserted against the previous plans. On February 6, 2006, the bankruptcy court granted the most recent Motion to Amend and confirmed the Second Amended Plan. Tina Livestock appealed that order, and that matter was consolidated with the appeal already pending, due to the fact that the issues were identical.

In addition, on February 21, 2006, the bankruptcy court entered an order allowing Tina Livestock's claim, but ordered that it be paid only after all other general unsecured creditors are paid 100% of their claims.

The Debtors assert these appeals are frivolous and they requested sanctions under Rule 9011. Shortly after oral argument, Tina Livestock filed a Dismissal of Appeal, requesting that we deny as withdrawn or moot all actions pending on appeal, and that we dismiss these appeals. The Debtors opposed this request and asserted, among other things, that it would be inappropriate to allow dismissal of the appeals without assessing attorneys' fees and costs incurred in defending it.

On March 31, 2006, we issued an Order to Show Cause, concluding that, even if Rule 9011 is applicable to appeals,[4] the Debtors did not meet the requirement imposed by that rule to provide advance notice to the opposing party prior to the filing of the motion for sanctions. However, we observed, the applicable rule specifically relating to frivolous appeals is Rule 8020,[5] and, pursuant to that rule, we ordered Tina Livestock and its counsel to show cause why we should not impose sanctions for frivolous appeal in this case.[6] Tina Livestock and its counsel responded to the Order to Show Cause asserting that, although the appeals might have been frivolous in hindsight, sanctions are not warranted. The Debtors filed a reply, maintaining their position that we should award them their attorney fees incurred in defending these appeals.

---

[4] *See In re Great Road Serv. Ctr., Inc.*, 304 B.R. 547, 552 n. 4 (B.A.P. 1st Cir. 2004) (holding that Rule 9011 is not applicable on appeals; the appropriate rule is Rule 8020.) *But see In re Mahendra*, 131 F.3d 750, 759-60 (8th Cir. 1997) (affirming the district court's imposition of sanctions under Rule 9011 for frivolous appeal from the bankruptcy court and finding sanctions appropriate under Rule 38 for frivolous appeal to the Court of Appeals).

[5] Fed. R. Bankr. P. 8020.

[6] *See Porous Media Corp. v. Pall Corp.*, 201 F.3d 1058, 1060 (8th Cir. 2000) (Eighth Circuit Court of Appeals giving appellant notice of consideration of whether sanctions for frivolous appeal were warranted under Fed. R. App. P. 38). *See also Lincoln Benefit Life Co. v. Edwards*, 160 F.3d 415, 416 (8th Cir. 1998) (providing appellant ten days to respond why Rule 38 damages were not warranted); *In re Mahendra*, 131 F.3d at 760 (providing notice of possible sanctions for frivolous appeal under Rule 38 and opportunity to respond). In *In re Korte*, 262 B.R. 464 (B.A.P. 8th Cir. 2001), we determined we could not impose sanctions under Rule 8020, even though we found the appeal in that case to be frivolous, because the appellee did not file a separate motion as required under the rule. To the extent that decision could be interpreted to mean that we do not have the authority to provide the required notice under Rule 8020 on our own accord, we clarify here that, under the plain language of the rule and Eighth Circuit precedent, we do possess such authority. We simply chose not to do so in that case.

## DISCUSSION

Rule 8020 provides:

> If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee.[7]

Under this rule, we have the express authority to award damages or impose sanctions against a party for a frivolous appeal.[8] The language of Bankruptcy Rule 8020 is, for all practical purposes, identical to that of Federal Rule of Appellate Procedure 38. Accordingly, courts considering Bankruptcy Rule 8020 motions are guided by cases applying Appellate Rule 38.[9] Imposing sanctions under this rule is a two-step process: first the panel must determine whether the appeal is frivolous and, second, the panel must decide whether the procedural requirements of Rule 8020 are met.[10]

"An appeal is frivolous when the result is obvious or when the appellant's argument is wholly without merit."[11] We need not find that the appellant acted in bad faith in order to find an appeal to be frivolous.[12]

---

[7] Fed. R. Bankr. P. 8020.

[8] *In re Korte*, 262 B.R. 464, 475 n. 7 (B.A.P. 8th Cir. 2001).

[9] *In re Great Road Serv. Ctr.*, 304 B.R. at 552; *Safety Nat'l Cas. Corp. v. Kaiser Aluminum & Chem. Corp.*, 2003 WL 22928045 (D. Del. Nov. 25, 2003).

[10] *In re Great Road Serv. Ctr.*, 304 B.R. at 552.

[11] *Newhouse v. McCormick & Co., Inc.*, 130 F.3d 302, 305 (8th Cir. 1997).

[12] *Id.* (finding an appellee's cross-appeal to be frivolous even though the appellee did not act in bad faith).

In the Order to Show Cause, we outlined several reasons why we believed the result of these appeals were obvious and we directed Tina Livestock to respond to those reasons. The reasons we delineated are as follows.

First, Tina Livestock did not have standing to object to the Debtors' First and Second Amended Plans in the first place. At the time the motions to amend were filed, Tina Livestock did not hold an allowed claim because its late-filed claim was not allowed (in limited fashion) until February 21, 2006. Section § 1325(b)(1)'s "best efforts" test, one of Tina Livestock's primary objections to the plans, only applies to objections by the trustee and holders of allowed unsecured claims.[13] Thus, at the time it made each of its objections, Tina Livestock did not have standing to argue the "best efforts" test.

Moreover, the First and Second Amended Plans merely extended the original Plan's duration in order to ensure that the secured creditors would be paid in full and unsecured creditors would receive the 10% dividend they were supposed to receive as provided under the original Plan. The Amended Plans, therefore, did not adversely affect the treatment or payout to unsecured creditors already provided. "A creditor objecting to the modification of a confirmed plan must demonstrate prejudice in order to possess standing to object."[14] Assuming Tina Livestock could be considered an unsecured creditor with standing to object at the time the Debtors filed their motions to amend the Plan even though it did not possess an allowed claim at that time, the unsecured creditors were to receive the same amount under the Amended Plans as they were under the original Plan and were, therefore, not prejudiced by the amendments. Moreover, as to Tina Livestock's claim in particular, even though its claim was later allowed, the bankruptcy court's order allowing it provided for it to be paid only after all other allowed unsecured claims are paid in full. This could never

---

[13] 11 U.S.C. § 1325(b)(1).

[14] *In re Goodwin*, 183 B.R. 329, 330 n.2 (Bankr. S.D. Ga. 1995).

8

happen unless the Debtors somehow receive a windfall during the pendency of the Plan. Consequently, even more noticeably than the other allowed unsecured claims, the amendments did not adversely affect the treatment of Tina Livestock's claim. As a result, Tina Livestock lacked standing to object to the Amended Plans.

Second, the issues raised in Tina Livestock's objections to the First and Second Amended Plans were *res judicata* when the bankruptcy court confirmed the original Plan. In confirming the original Plan, the bankruptcy court implicitly found that it was proposed in good faith as required by § 1325(a)(3) and that it met the "best efforts" test of § 1325(b)(1). No one appealed the order confirming the original Plan and it became a final order. As a creditor in the case, Tina Livestock was bound by its terms, even though its (unfiled) claim was not provided for in the plan.[15] Since the Amended Plans changed nothing as to those issues already decided by the bankruptcy court, they are *res judicata* and Tina Livestock cannot raise them now.

Finally, even if we were to consider the merits of Tina Livestock's objections to the Amended Plans, we find them to be without basis. As mentioned above, Tina Livestock's primary complaint regarding the Amended Plans was that BCM's secured claim is being paid in full over the course of the Plan, which results in BCM being paid in full sooner than provided under its loan documents, at the alleged expense of unsecured creditors. However, BCM's claim is being bifurcated, and its secured claim is being crammed down to the value of the collateral securing its claim. Tina Livestock's assertion that BCM should not be paid in full over the life of the Plan violates the Bankruptcy Code because, in a Chapter 13 case, a debtor may not invoke both § 506(a) to bifurcate and thereby reduce the amount of a creditor's secured claim, and § 1322(b)(5) to extend repayment of the secured portion of the claim beyond a

---

[15]  11 U.S.C. § 1327(a) (the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to the plan).

period of five years.[16] Thus, the bankruptcy court could not require that BCM be paid over a period longer than the term of the Plan.

In the alternative, Tina Livestock urged that the Plan's duration be extended to 60 months to allow a higher dividend to unsecured creditors. However, the bankruptcy court could not require the Debtors to propose a 60-month plan without a finding of "cause" under § 1322(d).[17]

This brings us to Tina Livestock's good faith argument because, in essence, Tina Livestock urged that a 60-month plan was appropriate because the Debtors have not proposed their plan in good faith, due to the secured creditors being paid in full early, and due to the fact that its claim resulted from a bad check.

In the Eighth Circuit, "good faith" analysis under § 1325(a)(3) is focused on "whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13."[18] This requires looking to the totality of the circumstances to discern whether good faith exists.[19] In *In re Estus*, the Eighth Circuit enumerated several factors to be considered.[20] Following the enactment of § 1325(b), the Eighth Circuit concluded that that provision subsumed many of these factors, and so it narrowed the focus to one which depends on "whether the debtor has stated his debts and expenses accurately;

---

[16] *In re Rascon*, 321 B.R. 48, 53 (N.D. Cal. 2005); *In re Enewally*, 368 F.3d 1165, 1172 (9th Cir. 2004) ("a debtor may not use § 506(a) in combination with § 1322(b)(5) to reduce the secured claim and repay it over a period longer than the plan term"), *cert. denied*, 543 U.S. 1021, 125 S.Ct. 669, 160 L.Ed.2d 497 (2004).

[17] 11 U.S.C. § 1322(d) ("[t]he plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period").

[18] *In re LaMaire*, 898 F.2d 1346, 1348 (8th Cir. 1990) (citing *In re Estus*, 695 F.2d 311, 316 (8th Cir. 1982)).

[19] *Id.*

[20] *Id.* at 1349 n. 4.

10

whether he has made any fraudulent representation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code."[21] However, the Eighth Circuit preserved parts of the *Estus* "totality of circumstances" approach and, thus, factors such as the type of debt sought to be discharged and whether the debt is nondischargeable in Chapter 7, and the debtor's motivation and sincerity in seeking Chapter 13 relief, are particularly relevant.[22]

Tina Livestock pointed primarily to two factors evidencing lack of good faith, namely, the extent to which secured claims are being modified, and the type of debt sought to be discharged and whether such debt is nondischargeable in Chapter 7. As to the modification of the secured claim, as discussed above, the modification of BCM's secured claim is proper under the Code and, therefore, cannot form a basis for lack of good faith.

Tina Livestock also asserted the Plans were not proposed in good faith because its debt would be nondischargeable in a Chapter 7 under § 523(a)(2) and (4) because it resulted from a bad check. However, other than the bare assertion that it would be nondischargeable, Tina Livestock offered no evidence whatsoever that its debt would be nondischargeable. "The mere issuance of a 'bad check,' standing alone, is not grounds for a determination that such debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)."[23] In addition to the bad check itself, there must be other acts, and other evidence, supporting a claim for fraud or false representation, in order to declare such a debt to be nondischargeable.[24] "A determination that such a debt is non-dischargeable can only be established if the debtor did not intend to pay the creditor

---

[21] *Id*. at 1349 (citing *Educ. Assistance Corp. v. Zellner*, 827 F.2d 1222 (8th Cir. 1987)).

[22] *Id*.

[23] *In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000); *see also In re Scarlata*, 127 B.R. 1004 (N.D. Ill. 1991), *aff'd* 979 F.2d 521 (7th Cir. 1992).

[24] *Id*.

when the check was issued and knew the check would bounce."[25] Tina Livestock offered no evidence and made no showing at all as to the Debtors' intent or knowledge. In fact, the Debtors did repay $7,640 (42%) of the $18,005.58 bad check prepetition. We conclude, therefore, that there is simply no basis in the record to find that the debt to Tina Livestock, or any other creditor, would be nondischargeable in a Chapter 7 case. Consequently, this cannot form the basis for a finding of lack of good faith.

As we indicated in the Order to Show Cause, we find, based on the above discussion, that the result of these appeals was obvious and they were, therefore, frivolous. The question, then, is whether sanctions are appropriate, and, if so, what sanctions should be awarded.

In their Response to the Order to Show Cause, Tina Livestock and its counsel essentially concede that its appeals were, in hindsight, frivolous, but assert that counsel truly believed, at the time the appeal was filed and up until the conclusion of oral argument, that its position was meritorious. Counsel concedes that he may have failed to see the forest for the trees, so to speak, and states he did not realize this was a cram-down case until the question was raised at oral argument. He says he did not see this as a case as one fitting under the doctrine set forth in *In re Enewally*,[26] because the loan to BCM was primarily secured by the Debtors' residential real estate, thereby bringing it under § 1322(b)(2). Apparently, Tina Livestock did not realize or appreciate the fact that the BCM loan was also secured by inventory and other collateral, so that § 1322(b)(2) was not applicable.

We accept this part of counsel's explanation pertaining to the merits of his objections to the amended plans. However, what makes these appeals particularly

---

[25] *Id.*

[26] 368 F.3d at 1172.

12

frivolous are the points that (i) Tina Livestock lacked standing to object to the amended plans and (ii) the issues on the merits of the objections were *res judicata* because the original Plan, containing the same treatment of creditors, was confirmed without being appealed. Counsel does not respond to the *res judicata* point at all. And, the only response offered by counsel on the fact that Tina Livestock lacked standing to object to the amended plans is that the bankruptcy court "ruled that counsel had standing when that issue was raised by Debtors' counsel" and that, had the bankruptcy court not ruled he had standing, counsel would not have been permitted to present his arguments.

We find this explanation to be unsatisfactory for several reasons. First, counsel does not cite to the record anywhere where the bankruptcy court ruled he had standing, and we could find none. The Orders confirming the amended plans are summary orders simply confirming the respective plans and do not address Tina Livestock's objections or its standing at all. Further, the parties did not submit the transcripts of the hearings on confirmation of the First or Second Amended Plans and, despite the fact that we expressly invited the parties to supplement the record to submit the transcript of the hearing on confirmation of the First Amended Plan,[27] they declined to do so, with Tina Livestock expressly stating the only transcript it wished to submit was the one from the hearing on allowance of its late-filed claim.[28]

Consequently, we found in the record before us only one reference to Tina Livestock's standing to object to confirmation, and it appears in the transcript on the hearing to allow Tina Livestock's claim. Specifically, counsel for the Debtors objected to Tina Livestock's attempt to file its late claim so as to create standing to

---

[27] *See* Docket Entry dated January 6, 2006*, Clerk letter sent giving [Appellant] the opportunity to supplement the record with the transcript of the hearing on confirmation.*

[28] *See* Docket Entry dated January 17, 2006, *Letter from Fredrich J. Cruse for Appellant Tina Livestock Sales stating the record is complete as far as [Appellant] is concerned; the only transcript [Appellant] desired to include was the 6/30/05 hearing*.

13

object to the First Amended Plan, to which counsel for Tina Livestock disagreed, and the bankruptcy court said, "We haven't gotten to that" and "we'll get to that later."[29] Consequently, contrary to counsel's assertion, the record before us shows the bankruptcy court did not rule that Tina Livestock had standing to object to the Amended Plans.

Finally, counsel for Tina Livestock outlined for us the reasons why he failed to timely file a proof of claim, which is the root of Tina Livestock's problems in this case. In sum, counsel states he missed the claims deadline due to a family emergency which necessitated his being out of the state, and understandably distracted, when the deadline came and passed. We accept his explanation to be accurate. However, the reason *why* Tina Livestock did not have an allowed claim at the time the First Amended Plan was filed is irrelevant to the issue of *whether* Tina Livestock had an allowed claim and, thus, standing. In sum, it had no allowed claim, so it had no standing.[30] Moreover, as outlined above, even the creditors with allowed unsecured claims would not have had standing to object to the amended Plans because the amended Plans did not alter the treatment of unsecured creditors.

We reiterate that the *res judicata* and standing issues are what particularly rendered these appeals frivolous and, because Tina Livestock's response to those issues are absent or unconvincing, we find sanctions are warranted in this case.

---

[29] *Transcript of Motion to Allow Claims [sic] No. 18 by Creditor Tina Livestock Sales, Inc., (Cruse, Frederich) Before Honorable Kathy Surratt-States United States Bankruptcy Judge*, June 30, 2005, at 5- 6.

[30] We also note that bankruptcy courts are not permitted to allow, over an objection, late filed claims in a Chapter 13 case due to excusable neglect, even if disallowing the claim leads to unwelcome results. *See In re Griggs*, 306 B.R. 660, 663-64 (Bankr. W.D. Mo. 2004) (citing *Pioneer Investment Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 389 n.4, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (noting that excusable neglect is not applicable to late claims under Rule 3002(c)); Fed. R. Bankr. P. 9006(b)(1).

Counsel for the Debtors submitted a statement of her attorney fees and costs. She shows a total of 26.05 hours defending these appeals, up to the oral argument, at $160 per hour, plus the cost of a transcript of $33, for a total of $4,201. Tina Livestock's attorney asserts this amount is excessive, in view of the fact that he spent only 16.2 hours in pursuing this appeal. He also disputes fees incurred by Debtors' counsel dealing with the attorney for the BCM, the secured creditor. Debtors' counsel replies that, *inter alia*, it was BCM's claim that was being crammed down in the Plan and it considered filing an *amicus* brief to protect its interests in the appeal, so counsel was required to address that situation. We also note that the fee statement includes only the time incurred up to oral argument and that Debtors' counsel has certainly incurred fees after that point.[31]

After reviewing the fee statement and the statements by counsel, we find the attorney fees and costs to be reasonable under the circumstances.

Finally, counsel for Tina Livestock candidly concedes that his clients acted on his advice and, if he gave his client incorrect advice, he will accept responsibility for doing so. We agree that counsel should bear responsibility for the frivolous appeals in this case. Accordingly, we assess the costs and attorney fees against Tina Livestock's counsel, personally.[32]

---

[31] Although Debtors' counsel's reply to Tina Livestock's Response to the Order to Show Cause states she did not include time incurred for driving to oral argument in St. Louis, the Statement she submitted does include four hours of driving time. Nevertheless, we conclude that the total fees requested are reasonable.

[32] *See Cronin v. Town of Amesbury*, 81 F.3d 257, 262 (1st Cir. 1996) (assessing costs and fees against attorney).

## CONCLUSION

For the foregoing reasons, these appeals are dismissed. Further, because Tina Livestock Sales, Inc.'s appeals from the bankruptcy court's Orders confirming the First and Second Amended Plans were frivolous, Debtors Ralph D. Schachtele and Mildred A. Schachtele are awarded attorneys' fees in the amount of $4,168 and costs of $33, for a total of $4,201, against Fredrich J. Cruse, counsel for Tina Livestock Sales, Inc.

_____